NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BETZY SANTOS,                      :
                                   :
      Plaintiff,                 :            Civil Action No. 14-427 (SRC)
                                   :
      v.                         :            **OPINION**
                                   :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
                                   :
      Defendant.                 :
_____:

**CHESLER, District Judge**

      This matter comes before the Court on the appeal by Plaintiff Betzy Santos ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and the case remanded to the Commissioner for further proceedings in accordance with this Opinion.

      In brief, this appeal arises from Plaintiff's application for disability insurance and supplemental security income benefits, alleging disability beginning December 15, 2009. A hearing was held before ALJ Barbara Dunn (the "ALJ") on March 21, 2012, and a supplemental hearing was held on July 18, 2012. The ALJ issued a decision on August 1, 2012, finding that Plaintiff was not disabled within the meaning of the Social Security Act. After the Appeals Council denied Plantiff's request for review, the ALJ's decision became the Commissioner's

final decision, and Plaintiff filed this appeal.

The ALJ, in short, found that, at step three, Plaintiff did not meet or equal any of the Listings, and that, at step four, she did not retain the residual functional capacity to perform her past relevant work.  The ALJ found that Plaintiff retained the residual functional capacity to perform work with certain sitting, standing and lifting limitations, involving no more than two-step instructions, and with no more than occasional contact with the general public.  At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff appeals on several grounds, but this Court need reach only the argument for reversal that succeeds: the ALJ's residual functional capacity ("RFC") determination at step four is not supported by substantial evidence.  Plaintiff contends that the ALJ, in making the RFC determination, erred by improperly rejecting the opinion of Plaintiff's treating physician, Dr. Grelecki.  This is correct.

The record contains three reports submitted by psychiatrist Dr. Grelecki, which the ALJ accurately references.  In the report dated February 3, 2010, Dr. Grelecki diagnosed Plaintiff with depressive disorder not otherwise specified, and gave her a Global Assessment of Functioning ("GAF") score of 45.  (Tr. 233.)  In the report dated March 28, 2011, Dr. Grelecki gave the same diagnosis and stated that Plaintiff could not work, with an expected duration of incapacity of one year or more.  (Tr. 318.)  In the report dated April 9, 2012, Dr. Grelecki

completed a mental impairment questionnaire.  (Tr. 319-326.)  In this report, Dr. Grelecki stated, *inter alia*, that he had treated Plaintiff since February of 2010, that she had a diagnosis and GAF score the same as stated in the report of February 3, 2010, and that Plaintiff was unable to work. (Id.)  Also, Dr. Grelecki rated Plaintiff as poor, the lowest possible rating, on 13 out of 25 work-related mental abilities.  (Tr. 323-325.)  In the section asking for ratings of functional limitations in three domains, Dr. Grelecki rated Plaintiff as moderately limited in restrictions in activities of daily living, moderately limited in difficulties in maintaining social functioning, and having frequent  deficiencies of concentration, persistence or pace.  (Tr. 325.)

The ALJ explained his rejection of Dr. Grelecki's opinions as follows:

> The undersigned gives little weight to the opinions of Dr. Grelecki as they are not
> supported by the record, by the claimant's own comments, or by the doctor's own
> progress notes.  Further, the claimant's consultative evaluation on July 26, 2010,
> did not support Dr. Grelecki's opinions.

(Tr. 20.)  As Plaintiff contends, there are multiple problems with this rejection of the opinions of a treating physician.

First, it appears that the ALJ rejected Dr. Grelecki's opinion on the basis of her own medical opinion. The ALJ cannot discount medical opinions based on her own analysis of the medical evidence. This is absolutely forbidden under Third Circuit law: "By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."  Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).  Here, the ALJ impermissibly substituted her own judgment for that of a professional. This alone provides a basis for vacating the ALJ's decision.

Second, the Third Circuit has also held:

> In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  The ALJ's rejection of Dr. Grelecki's opinion is not permissible under Morales.  The record contains no medical evidence that contradicts Dr. Grelecki's conclusions.

Third, the ALJ's assertion that the consultative evaluation of July 26, 2010, does not support Dr. Grelecki's opinions is not supported by the record.  The record contains a psychological evaluation report by Dr. Perdomo, dated July 26, 2010.  (Tr. 253-256.)  Dr. Perdomo gave Plaintiff a diagnosis of recurrent major depression, moderate, without psychotic features.  (Tr. 256.)  This appears to be entirely consistent with Dr. Grelecki's diagnosis of depressive disorder not otherwise specified.  Dr. Perdomo did not state any assessments of Plaintiff's ability to work, except to state: "Her condition may affect her ability to function effectively at the job."  (Id.)  This statement cannot fairly be considered to not support Dr. Grelecki's opinions.  The only obvious difference between the assessment of Dr. Perdomo and that of Dr. Grelecki is the GAF score: Dr. Grelecki rated Plaintiff as more severely impaired, with a GAF of 45, while Dr. Perdomo rated Plaintiff as moderately impaired, with a GAF of 70.  The fact that Dr. Perdomo rated Plaintiff as moderately impaired in her functioning is not, however, inconsistent with Dr. Grelecki's conclusions about Plaintiff's inability to work.  This difference alone does not provide a basis to find that Dr. Perdomo's report constitutes medical evidence that contradicts the opinions of Dr. Grelecki.  The ALJ rejected the treating physician's opinion outright without citing contradictory medical evidence, as required by Morales.

The ALJ did not refer to the assessments in the record by Dr. Joynson, a psychologist.

4

Dr. Joynson completed a "Psychiatric Review Technique" form, dated July 26, 2010, which stated a diagnosis of depressive disorder not otherwise specified. (Tr. 261.) In the section of the form for ratings of functional limitations, Dr. Joynson rated mild limitations in restrictions in activities of daily living and difficulties in maintaining social functioning, as well as moderate deficiencies in maintaining concentration, persistence or pace. (Tr. 268.) Dr. Joynson completed a "Mental Residual Functional Capacity Assessment" form, dated August 12, 2010, which finds moderate limitations in two areas related to concentration and pace. (Tr. 276-277.) In the narrative portion of this form, Dr. Joynson notes the psychological consultative evaluation performed on July 26, 2010, evidently the one by Dr. Perdomo, with the summary statement that it is "consistent" with Dr. Grelecki's assessment. (Tr. 278.) This last statement is at variance with the ALJ's conclusion that Dr. Perdomo's evaluation did not support Dr. Grelecki's opinions.

The Commissioner, in opposition, contends that the ALJ's discounting of Dr. Grelecki's opinion was proper, citing 20 C.F.R. § 416.927(c)(2), the Regulation which deals with the issue of when a treating physician's opinion is given controlling weight. The Commissioner's application of this Regulation, however, does not follow the law of the Third Circuit, as stated in Morales. Morales clearly states that, in the Third Circuit, the ALJ does not have the discretion to reject a treating physician's opinion on the basis of his own assessment of the medical record. The Third Circuit has further explained: "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Had the

record contained a medical opinion which contradicted those of Dr. Grelecki, the ALJ might

have legitimately chosen to give one medical opinion greater weight than another, but that is not

the case here.  In the instant case, Dr. Grelecki's opinion is consistent with the opinions of all the

other experts.  The Regulation cited by the Commissioner does not authorize the ALJ to reject

uncontradicted medical evidence based solely on his own assessment of the record.  And,

contrary to the Commissioner's suggestion, this is not a case in which the ALJ merely gave a

treating physician's opinion lesser weight, as permitted under Plummer and the Regulation cited

by the Commissioner, 20 C.F.R. § 416.927(c)(2).

It is worth noting, again, that the ALJ did not mention Dr. Joynson's evaluations in the

decision.  Dr. Joynson is the mental health expert who assessed Plaintiff as least mentally

impaired – as moderately limited only in the ability to maintain concentration and pace.  This

might reasonably have been found to constitute substantial evidence that, with regard to mental

abilities, Plaintiff retained the residual functional capacity to perform jobs consistent with such

moderate limitations.  The ALJ might have presented the vocational expert with a hypothetical

which incorporated this residual functional capacity, and the vocational expert might have

opined on whether jobs existed in the national economy which Plaintiff could perform.  Of

course, this is not what actually occurred.  The ALJ's RFC determination did not incorporate

these limitations, nor did the hypothetical presented to the vocational expert.[1]

---

[1] As to the adequacy of the hypothetical in conveying Plaintiff's concentration problems,
it is interesting to note the Third Circuit's decision in Ramirez v. Barnhart, 372 F.3d 546, 554
(3d Cir. 2004).  In Ramirez, the ALJ had found that the claimant "often" had deficiencies in
concentration, persistence, and pace, and had presented the vocational expert with a hypothetical
quite similar to the one in the instant case – requiring a job limited to one to two-step tasks.  Id.
The Third Circuit found that this limitation did not adequately incorporate the deficiencies in
concentration, persistence, and pace, and concluded: "we hold that the ALJ's hypothetical did not

The ALJ improperly rejected the opinion of Plaintiff's treating physician.  As a result, this Court concludes that the ALJ erred both at steps four and five.  At step four, the residual functional capacity determination is not supported by substantial evidence.  At step five, "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).  Based as it was on a faulty residual functional capacity determination, the hypothetical presented did not convey all of the Plaintiff's credibly established limitations.  The decision of the Commissioner will be vacated, and the case remanded to the Commissioner for further proceedings in accordance with this Opinion.

       s/ Stanley R. Chesler
     STANLEY R. CHESLER, U.S.D.J.

Dated: March 19, 2015

---

adequately capture and recite all of Ramirez's mental impairments and the limitations caused by those impairments."  Id. at 555.  Thus, even if the ALJ had chosen to credit only Dr. Joynson's opinion about Plaintiff's mental limitations in the RFC determination, the hypothetical offered would not have been sufficient to portray those limitations, under Ramirez.